2014 UT App 57

**John REYNOLDS, Plaintiff
and Appellant,**

v.

**Bret MacFARLANE, Defendant
and Appellee.**

**No. 20121000–CA.**

Court of Appeals of Utah.

March 13, 2014.

Randall Lee Marshall, for Appellant.

Craig T. Jacobsen, for Appellee.

Senior Judge RUSSELL W. BENCH authored this Memorandum Decision, in which Judges GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

Memorandum Decision

BENCH, Senior Judge:

¶1 John Reynolds appeals from the trial court's dismissal of his intentional tort claims against Bret MacFarlane. We affirm in part, reverse in part, and remand to the trial court.

¶2 On August 5, 2009, MacFarlane walked into the break room at his workplace where his coworker, Reynolds, was standing in front of the microwave oven.[2] Reynolds was holding a ten dollar bill somewhat loosely in his hand. Reynolds was unaware of MacFarlane's presence. MacFarlane approached Reynolds from behind and, without touching Reynolds, quickly snatched the ten dollar bill. Reynolds immediately spun around and faced MacFarlane. MacFarlane then stated, "That was too easy," and returned the ten dollar bill to Reynolds. As MacFarlane began to walk away, Reynolds struck MacFarlane, splitting his lip. MacFarlane asked why he hit him. Reynolds replied, "You pissed me off." Shortly after this incident, the two interacted with a larger group of employees outside, and the employees joked around and completed their break. The two men were together at an offsite employee lunch some days later, and on multiple occasions after the incident Reynolds sought out and voluntarily spoke with MacFarlane in MacFarlane's work area.

¶3 Nevertheless, the incident was reported to the parties' supervisor. During the ensuing investigation, Reynolds reported to the supervisor that the incident was "nothing" and that any contact between the parties was accidental. Reynolds was ultimately punished with a one-day suspension without pay for striking another employee. Thereafter, Reynolds received medical treatment for anxiety, which Reynolds explained to his physician had resulted from difficulties at work.

¶4 Nearly one year later, Reynolds filed a complaint against MacFarlane, alleging assault and intentional infliction of emotional distress. At a bench trial, the parties stipulated to the dismissal of Reynolds's claim for intentional infliction of emotional distress, but Reynolds moved to amend his complaint to include a claim for battery. The court granted Reynolds's motion. After hearing the evidence, the trial court found MacFarlane "to be more credible in that [his] testimony was more consistent and was corroborated by multiple parties." Accordingly, the court based its findings of fact largely on MacFarlane's testimony. The trial court concluded that Reynolds had not met his burden of proof to show that MacFarlane had committed an assault or a battery against him and then dismissed the case with prejudice. Reynolds appeals.

I. Assault

¶5 Reynolds challenges the trial court's conclusion that he failed to prove assault. As an appellate court, we give great deference to the trial court's role as a fact finder and will review its findings of fact only for clear error. *Henshaw v. Henshaw*, 2012 UT App 56, ¶10, 271 P.3d 837. We review the trial court's legal conclusions for correct-

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶2, 51 P.3d 45 (citation and internal quotation marks omitted).

ness. *In re Adoption of Baby B.*, 2012 UT 35, ¶ 41, 308 P.3d 382.

¶ 6 To the extent that Reynolds challenges the trial court's findings of fact, he merely reargues the evidence in favor of his position and does not adequately marshal the evidence supporting the trial court's findings as required by our rules of appellate procedure. *See* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). Because of this failure to marshal, we accept the facts as articulated by the trial court. *See Allen v. Ciokewicz*, 2012 UT App 162, ¶¶ 29–30, 280 P.3d 425.

¶ 7 Under Utah law, "[a]n assault is an act '(a) . . . intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact' by which '(b) . . . the other is . . . put in such imminent apprehension.'" *Tiede v. State*, 915 P.2d 500, 503 n. 3 (Utah 1996) (omissions in original) (quoting Restatement (Second) of Torts § 21 (1965)). The trial court concluded that Reynolds could not prevail on his assault claim for three reasons. First, the trial court determined that Reynolds failed to establish that he was in imminent apprehension of harmful or offensive contact because he was not aware of MacFarlane's presence until after he spun around to find out who had taken his ten dollar bill. Second, the trial court ruled that even though MacFarlane intended to take the ten dollar bill, MacFarlane did not intend to cause imminent apprehension of harmful contact in Reynolds by doing so. Third, the trial court ruled that Reynolds suffered no injury or damages as a result of MacFarlane's actions. Reynolds challenges each of these conclusions. We need address only Reynolds's first challenge because it is dispositive to our conclusion that the trial court correctly determined that Reynolds failed to prove that an assault occurred.

¶ 8 Reynolds concedes that a plaintiff complaining of assault "must be aware of the defendant's act." *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 10, at 44 (5th ed.1984) ("Since the interest involved is the mental one of apprehension of contact, it should follow that the plaintiff

must be aware of the threat of contact, and that it is not an assault to aim a gun at one who is unaware of it."). In Reynolds's view, this requirement is satisfied in this case because he "was keenly aware of what happened to him" "the moment the money was snatched from his hand."

¶ 9 However, a plaintiff complaining of assault cannot be in apprehension of harmful or offensive contact unless he is aware of such contact *before* the threat of the contact is accomplished or has dissipated. "The plaintiff's subjective recognition or apprehension that [he] is about to be touched in an impermissible way is at the core of [an] assault claim." 1 Dan B. Dobbs et al., *The Law of Torts* § 38, at 97 (2d ed.2011). As section 22 of the Restatement explains, "An attempt to inflict a harmful or offensive contact or to cause an apprehension of such contact does not make the actor liable for an assault if the other does not become aware of the attempt before it is terminated." Restatement (Second) of Torts § 22 (1965); *see also id.* § 22 cmt. a ("[T]he defendant is not liable if his efforts to inflict the bodily contact have been abandoned or frustrated before the other is aware of them, since in such case the other is not put in the required apprehension."). Reynolds has directed us to no authority to the contrary.

¶ 10 As a result, we conclude that the trial court correctly ruled that Reynolds was not in imminent apprehension of harmful or offensive contact because he was not aware of MacFarlane's presence until after MacFarlane took the ten dollar bill from Reynolds's hand. In other words, Reynolds could not have been in apprehension of a physical contact without having been aware of MacFarlane's impending action to grab the ten dollar bill before MacFarlane completed the act of taking the bill. Accordingly, Reynolds did not prove that MacFarlane committed an assault against him, and the trial court correctly dismissed his assault claim.

## II. Battery

¶ 11 Reynolds also challenges the trial court's determination that he failed to establish the elements of a battery. We review

the trial court's legal conclusions for correctness. *See In re Adoption of Baby B.*, 2012 UT 35, ¶ 41, 308 P.3d 382.

■ ¶ 12 Utah has adopted the Restatement (Second) of Torts to define the elements of the intentional tort of battery. *Wagner v. State*, 2005 UT 54, ¶ 16, 122 P.3d 599. Consequently, an actor is liable for battery if " '(a) he acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.' " *Id.* (quoting Restatement (Second) of Torts § 13 (1965)).

¶ 13 In this case, the trial court found that MacFarlane did not touch Reynolds when he grabbed the ten dollar bill from Reynolds's hand. Because "MacFarlane never touched or came into contact with Reynolds," the trial court concluded that Reynolds did not meet his burden of proof to show that a harmful contact resulted from MacFarlane's action.[3] Reynolds asserts that the trial court's conclusion is erroneous because MacFarlane's grabbing of an object—the ten dollar bill—from his hand was sufficient contact with his person to constitute a battery.

■ ¶ 14 For the intentional tort of battery, harmful or offensive contact "includes all physical contacts that the individual either expressly communicates are unwanted, or those contacts to which no reasonable person would consent." *Id.* ¶ 51. But "it is not necessary that the plaintiff's actual body be disturbed." Restatement (Second) of Torts § 18 cmt. c (1965). Rather, "[p]rotection of the interest in freedom from intentional and unpermitted contacts with the plaintiff's person extends to any part of the body, or to anything which is attached to it and practically identified with it." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 9, at 39 (5th ed.1984) (footnote omitted). "Thus, if all other requisites of a battery against the plaintiff are satisfied, contact

with the plaintiff's clothing, or with a cane, a paper, or any other object held in the plaintiff's hand, will be sufficient" to support a battery claim because the "interest in the integrity of [a] person includes all those things which are in contact or connected with the person." *Id.* § 9, at 39–40 (footnotes omitted); *see also Morgan v. Loyacomo*, 190 Miss. 656, 1 So.2d 510, 511 (1941) ("[T]o constitute assault and battery, it is not necessary to touch the plaintiff's body or even his clothing; knocking or snatching anything from [the] plaintiff's hand or touching anything connected with his person, when done in a rude or insolent manner, is sufficient."); *Picard v. Barry Pontiac–Buick, Inc.*, 654 A.2d 690, 694 (R.I.1995) ("[D]efendant's offensive contact with an object attached to or identified with plaintiff's body was sufficient to constitute a battery."); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex.1967) ("The intentional snatching of an object from one's hand is as clearly an offensive invasion of his person as would be an actual contact with the body."). *But see Workman v. United Fixtures Co.*, 116 F.Supp.2d 885, 896–97 (W.D.Mich.2000) (concluding that even if the defendant removed a paper from the plaintiff's hand, "nothing in the record suggests that [the defendant's] alleged actions amounted to an offensive contact battery"). We consider the above authorities as persuasive and not inconsistent with our supreme court's battery analysis.

¶ 15 In this case, MacFarlane's act of taking the ten dollar bill held loosely in Reynolds's hand was sufficient contact to constitute the contact element of battery, *see Wagner*, 2005 UT 54, ¶ 16, 122 P.3d 599, notwithstanding the fact that MacFarlane did not touch Reynolds's body. When held in his hand, the ten dollar bill was connected to Reynolds such that when MacFarlane snatched the bill from Reynolds, MacFarlane's act resulted in offensive contact with Reynolds's person. The intent element of battery was also met in this case because

---

**3.** The trial court explained,

Reynolds cited case law from other jurisdictions holding that the intentional snatching of an object from one's hand could constitute an offensive invasion of one's person, so as to constitute an actual, physical contact. However-

er, the Court concludes that Utah has not so extended the definition of battery to include such actions as actual contact. If the law in Utah were to be so extended, the Court's findings would give rise to a battery by MacFarlane.

the trial court found that MacFarlane intended to take the bill from Reynolds's hand when he acted. *See id.* ¶ 29 ("[T]he only intent required to commit a battery is the intent to make a contact, not an intent to harm, injure, or offend through that contact."). Accordingly, we conclude that the trial court erred in dismissing Reynolds's battery claim because the court's factual findings establish both elements of the claim.

¶ 16 The trial court determined that Reynolds suffered no damages as a result of the August 5, 2009 incident. The Utah Supreme Court has explained that "[a] harmful or offensive contact is simply one to which the recipient of the contact has not consented either directly or by implication." *Id.* ¶ 51. "[H]armful or offensive contact is *not limited to that which is medically injurious* or perpetrated with the intent to cause some form of psychological or physical injury." *Id.* (emphasis added). Instead, harmful or offensive contact "includes all physical contacts that the individual either expressly communicates are unwanted, or those contacts to which no reasonable person would consent." *Id.* Moreover, "[c]ommon law battery does not require that the nonconsensual contact be injurious. Rather, proof of an unauthorized invasion of the plaintiff's person, even if harmless, *entitles him to at least nominal damages.*" *Lounsbury v. Capel,* 836 P.2d 188, 192–93 (Utah Ct.App.1992) (emphasis added); *see also id.* at 196 ("[A plaintiff] need not prove injury to sustain his battery claim; if he proves no more than the 'offense' of the nonconsensual touching, he is entitled to nominal damages."); Keeton et al. § 9, at 41 ("[T]he defendant is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting."). "Damages for pain, suffering, 'psychological problems' and the like, however, may ... be recovered only to the extent that [the plaintiff] proves they were a proximate result" of the nonconsensual touching. *Lounsbury,* 836 P.2d at 196.

¶ 17 Here, the trial court found that "no injury resulted to Reynolds as a direct and proximate cause of MacFarlane's actions." Thus, the trial court ruled that Reyn-

olds's claimed damages—the one-day suspension and his medical issues following the break-room incident with MacFarlane—were not proximately caused by MacFarlane's act. Reynolds has not effectively challenged this ruling on appeal. However, because we have concluded that MacFarlane committed a battery, Reynolds is entitled to nominal damages. *See id.* at 192–93 ("[U]nauthorized invasion of the plaintiff's person, even if harmless, entitles him to at least nominal damages."). Accordingly, we remand to the trial court for an award of nominal damages to Reynolds for battery.

### III. Attorney Fees

¶ 18 MacFarlane requests an award of attorney fees incurred on appeal, pursuant to rule 33 of the Utah Rules of Appellate Procedure. MacFarlane argues that Reynolds's appeal in this matter is frivolous and asserts that he is therefore entitled to attorney fees.

¶ 19 "[I]f the court determines that a[n] ... appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include ... reasonable attorney fees, to the prevailing party." Utah R.App. P. 33(a). A frivolous appeal "is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). Because we reverse the trial court's ruling on one of the issues raised, Reynolds's appeal is clearly not frivolous. We therefore decline to award MacFarlane the attorney fees that he has incurred on appeal.

¶ 20 In sum, the trial court correctly concluded that Reynolds did not establish the elements of assault, because Reynolds was not aware of MacFarlane's imminent contact. We affirm the dismissal of Reynolds's assault claim, reverse the dismissal of Reynolds's battery claim, and remand to the trial court for judgment in favor of Reynolds on his battery claim and for an award of nominal damages.